**FILED**

JAN - 9 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ESTATE OF SOLOMON ELI TORRES,
et al.,

NO. CIV. S-98-2211 WBS/GGH

        Plaintiffs,

    v.

MEMORANDUM AND ORDER

RE: Cal Terhune; Motion for
Summary Judgment

CAL A. TERHUNE, et al.,

        Defendants.

----oo0oo----

        Plaintiffs Estate of Solomon Torres, et al. sue

defendants Cal Terhune et al. for various federal constitutional

and state law claims.  Terhune, the Director of the California

Department of Corrections ("CDC") during the period of time

giving rise to this suit, moves for summary judgment pursuant to

Federal Rule of Civil Procedure 56.

I.  Factual and Procedural Background

        Plaintiffs allege that defendant prison officials shot

and killed Solomon Eli Torres aka David Solomon Torres

("Torres"), an inmate at California's High Desert State Prison

("HDSP"), during a prison-yard altercation between inmates

1

539

1  belonging to the "Southern Hispanics" and "Others" factions on
2  February 4, 1998. Plaintiffs allege that Torres was on the
3  ground, receiving severe blows from another inmate, when he was
4  shot. (Pls.' Opp'n at 11). They contend that the policies and
5  practices related to the use of lethal force at HDSP in 1998 were
6  unconstitutional. (Am. Compl. ¶ 64). They further allege that
7  Terhune and other defendant prison officials failed to properly
8  train and supervise correctional officers in the use of lethal
9  force against inmates. (Am. Compl. ¶ 69).

10         Plaintiffs allege that prior to the February 1998
11  altercation, defendants adopted an "integrated yard policy,"
12  under which inmates of various ethnic and factional affiliations
13  were sent into the yard. (Am. Compl. ¶ 95). According to
14  plaintiffs, this environment was promoted despite prison
15  officials' knowledge of intercultural hostilities between inmates
16  and the likelihood of violent altercations when members of these
17  groups were released to the yard at the same time.

18         Plaintiffs contend that the management of HDSP was in
19  disarray during this time because Susan Yearwood, then-Warden of
20  HDSP, was unqualified for her position and did not perform
21  satisfactorily. (Pls.' Opp'n at 7)

22         Plaintiffs further allege that the Shooting Review
23  Board ("SRB"), which was convened after the incident to
24  investigate whether the shooting was in compliance with CDC
25  policy, ignored significant testimony and evidence in preparing
26  its report. (Pls.' Opp'n at 14). They contend that the
27  Executive Use of Force Committee, which reviewed the SRB report,
28  accepted inaccurate explanations from the SRB about

1 inconsistencies in evidence, without further investigation.
2 (Id.).

3         Defendant Terhune now moves for summary judgment on the
4 basis of qualified immunity.

5 II.   Discussion

6         The court must grant summary judgment to a moving party
7 "if the pleadings, depositions, answers to interrogatories, and
8 admissions on file, together with the affidavits, if any, show
9 that there is no genuine issue as to any material fact and that
10 the moving party is entitled to judgment as a matter of law."
11 Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary
12 judgment may not simply deny generally the pleadings of the
13 movant; the adverse party must designate "specific facts showing
14 that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);
15 Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Simply put, "a
16 summary judgment motion cannot be defeated by relying solely on
17 conclusory allegations unsupported by factual data."  Taylor v.
18 List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The non-moving party
19 must show more than a mere "metaphysical doubt" as to the
20 material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio, 475
21 U.S. 574, 587 (1986).

22 A.   Qualified Immunity

23         A public official is entitled to qualified immunity if
24 the law governing the official's conduct was not clearly
25 established, or if under clearly established law he could have
26 reasonably believed that his conduct was lawful.  Jeffers v.
27 Gomez, 267 F.3d 895, 910 (9th Cir. 2001).  The defendant bears
28 the burden of establishing qualified immunity.  Crawford-El v.

1 Britton, 523 U.S. 574, 586-87 (1998).

2 The United States Supreme Court recently articulated
3 the following test for determining qualified immunity.  As a
4 threshold question, the court must ask: "Taken in the light most
5 favorable to the party asserting the injury, do the facts alleged
6 show the [official's] conduct violated a constitutional right?"
7 Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001).  If the answer is
8 affirmative in that "a violation could be made out on a favorable
9 view of the parties' submissions, the next, sequential step is to
10 ask whether the right was clearly established."  Id. at 2156.
11 The Court emphasized that the "relevant, dispositive inquiry in
12 determining whether a right is clearly established is whether it
13 would be clear to a reasonable [official] that his conduct was
14 unlawful in the situation he confronted."  Id.  If the answer is
15 negative, the official is entitled to qualified immunity.

16 The Supreme Court has repeatedly "stressed the
17 importance of resolving immunity questions at the earliest
18 possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224,
19 227 (1991), cited in Saucier, 121 S.Ct. at 2156.  Where a
20 defendant seeks qualified immunity, "a ruling on that issue
21 should be made early in the proceedings so that the costs and
22 expenses of trial are avoided where the defense is dispositive."
23 Id. at 2156-57.

24 B.  Supervisory Liability

25 A supervisory official is not liable for the actions of
26 subordinates on a respondeat superior theory under 42 U.S.C. §
27 1983.  Jeffers, 267 F.3d at 915 (citing Hansen v. Black, 885 F.2d
28 642, 645-46 (9th Cir. 1989)).  "A supervisor may be liable under

4

1  § 1983 only if there exists either (1) his or her personal
2  involvement in the constitutional deprivation, or (2) a
3  sufficient causal connection between the supervisor's wrongful
4  conduct and the constitutional violation." Id. (internal
5  quotations omitted).

6          A causal connection is "an affirmative link" between a
7  constitutional deprivation and "the adoption of any plan or
8  policy by [a supervisor,] express or otherwise showing [his or
9  her] authorization or approval of such misconduct." Rizzo v.
10 Goode, 423 U.S. 362, 371 (1976).  The inquiry into causation
11 "must be individualized" and focused on the duties and
12 responsibilities of the individual defendant whose acts or
13 omissions are alleged to have caused a violation.  Leer v.
14 Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

15         Because Terhune had no direct involvement in releasing
16 inmates into the yard, stopping the altercation among inmates,
17 and rendering medical assistance on February 4, 1998, plaintiffs'
18 claims against him and his qualified immunity defense can only be
19 examined in the context of his policy-level activities.[1]

20

21         [1]     The Duty Statement for the CDC Office of the Director,
22 which was in force on February 4, 1998, provides in part:

23     The Director of the California Department of
       Corrections is appointed by the Governor to manage the
24     state's prison, parole and community-based correctional
       systems.  The Director is assisted by a Chief Deputy
25     Director, six Deputy Directors who head the
       Department's six divisions and seven Assistant Director
26     who head the seven offices.  The Director also chairs
       the Prison Industry Board which oversees the Prison
27     Industry Authority.  The Director is responsible for
       the administration of 20 state prisons, 40 conservation
28     camps and more than 50 community-based parole reentry
       facilities.

5

1 <u>Jeffers</u>, 267 F.3d at 916.

2       C.  <u>Eighth Amendment Claims under Section 1983</u>

3           1.  <u>Use of Force Policy</u>

4       Plaintiffs allege that Terhune adopted and implemented

5 policies regarding the use of lethal force against inmates which

6 led to the shooting death of Torres, in violation of his Eighth

7 and Fourteenth Amendment rights. Terhune is entitled to

8 qualified immunity for claims arising out of his policy decisions

9 unless the policy at issue is "so deficient that the policy

10 itself is a repudiation of constitutional rights and is the

11 moving force of the constitutional violation." <u>Jeffers</u>, 267 F.3d

12 at 914 (citing <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446

13 (9th Cir. 1991)) (internal quotations omitted).

14       The use of force policy in effect at the time of the

15 incident, codified as Title 15 of the California Code of

16 Regulations, section 3276(b), provided that:

17       firearms shall only be used when reasonably necessary
      to prevent or stop escapes, the taking of hostages, or

18       other circumstances which present an immediate danger
      of escape, loss of life, great bodily injury, or damage

19       to a substantial amount of valuable property.

20 (Terhune's Am. Stmt. of Undisputed Facts, hereinafter "Terhune's

21 SUF", Ex. A). The policy further provided that firearms "shall

22 be used only as a last resort after other reasonable and

23 available resources have been considered and exhausted or are

24 determined to be clearly inappropriate in view of the immediate

25 need to use armed force." (<u>Id.</u>). The policy stated that when

26 necessary to aim and fire at a person, "the shot should, whenever

27    ————————————

28 (Terhune SUF Ex. D).

1  possible, be aimed to disable and stop rather than to kill."
2  (Id.).  Finally, the policy provided that firearms were not to be
3  used to stop "fist fights" between inmates when there is no
4  danger of death or great bodily harm.  (Terhune Mot. at 5).

5       The identical use of force policy was considered by the
6  Ninth Circuit in Jeffers v. Gomez, 267 F.3d at 915.  In Jeffers,
7  the court found that this policy was constitutionally valid and
8  held that former CDC Director Gomez was entitled to qualified
9  immunity on claims related to the use-of-force policy.  Id. at
10 914, 918.  Thus, under Jeffers the same policy at issue here is
11 not so deficient that it is "itself a repudiation of
12 constitutional rights."  Id. at 914.

13      Plaintiffs further allege that Terhune exhibited
14 deliberate indifference to the constitutional rights of Torres by
15 authorizing policies and practices that were different from the
16 use of force policy as written.  (Pls.' Opp'n at 20).  Plaintiffs
17 argue that the policy as implemented condoned the use of force on
18 inmates in less than life threatening situations. (Pls.' Opp'n at
19 21).

20      To establish a prison official's deliberate
21 indifference in violation of the Eighth Amendment, plaintiffs
22 must show that the official "knows of and disregards an excessive
23 risk to inmate health or safety."  Farmer v. Brennan, 511 U.S.
24 825, 837 (1994).  "[T]he official must both be aware of facts
25 from which the inference could be drawn that a substantial risk
26 of serious harm exists, and he must also draw the inference." Id.
27 Unless there exists a "a sufficient causal connection" between
28 the Terhune's conduct and the alleged constitutional violation,

7

1 the Director cannot be liable under § 1983.  Jeffers, 267 F.3d at
2 915.  Plaintiffs have presented no evidence to support their
3 allegations that Terhune implemented the use of force policy in a
4 deliberately indifferent manner, in that he condoned staff
5 deviation from the policy or authorized that it be applied in a
6 manner that was inconsistent with the policy as written.
7 Plaintiffs have not raised a triable issue of fact that
8 Terhune engaged in any conduct related to use of force policies
9 or practices that caused a violation of the decedent's
10 constitutional rights.

11          Thus, Terhune is entitled to summary judgment on the
12 basis of qualified immunity for all claims pertaining to CDC and
13 HDSP use of force policies.

14               2.   Integrated Yard Policy

15          Plaintiffs also allege that defendant Terhune
16 promulgated an unconstitutional integrated yard policy that did
17 not "provide for circumstances under which, the safety of inmates
18 must be taken into account, prior to forcing the inmates to [be]
19 integrated in the same yard." (Pls.' Opp'n at 28).

20          The integrated yard policy provides that:
            it is the intent of the Department of Corrections to
21          exercise and program inmates in an integrated setting.
            Inmates will not be separated solely on the basis of
22          race and ethnicity, religious background, gang
            affiliation, or geographical location.
23
   (Terhune's SUF Ex. B).  The policy further provides that:
24
            The Department realizes that at times it may be
25          necessary to separate various factions of inmates in
            order to prevent, contain, or control a specific
26          disturbance.  Temporary measures will be taken in order
            to ensure the affected areas of the institution are
27          returned to normal integrated operations as soon as
            possible after such a disturbance.
28

                                  8

1 (Id.). Unless a policy is "so deficient that the policy itself
2 is a repudiation of constitutional rights," Terhune is entitled
3 to qualified immunity for the promulgation of the integrated yard
4 policy. Jeffers, 267 F.3d at 914. The policy of integrating
5 inmates of various ethnic groups is a policy of not racially
6 segregating inmates, and cannot be a repudiation of the
7 decedent's constitutional rights. In Cruz v. Bento, 405 U.S.
8 319, 321 (1972), the Supreme Court suggested that a state-wide
9 policy of segregating prison yards may be unconstitutional. Id.
10 (finding that "racial segregation, which is unconstitutional
11 outside prisons, is unconstitutional within prisons, save for the
12 necessities of prison security and discipline.").

13          Plaintiffs have failed to raise a triable issue of fact
14 that Terhune's conduct at the policymaking level was the moving
15 force behind any constitutional violation. Jeffers, 267 F.3d at
16 915. Plaintiffs present no evidence that Terhune acted with
17 deliberate indifference in maintaining the integrated yard
18 policy, namely that he enforced this policy with knowledge of and
19 disregard for "an excessive risk" to inmate safety. Farmer, 511
20 U.S. at 837. Furthermore, plaintiffs present no evidence that
21 Terhune promulgated or ratified any other unwritten policies or
22 practices among custodial staff that promoted integrated release
23 in order to trigger violent altercations among inmates.

24          Thus, Terhune is entitled summary judgment on the basis
25 of qualified immunity for all claims pertaining to the integrated
26 yard policy.

27          3.   Shooting Review Board

28               Plaintiffs allege that prison officials at HDSP failed

9

1 to conduct a proper investigation of the shooting incident.
2 Terhune did not participate in the investigation, thus this claim
3 can only be analyzed in the context of his policymaking
4 activities.

5 CDC's Shooting Review Policy provides that a Shooting
6 Review Board will investigate a shooting incident that involves
7 serious injury or death. (Terhune's SUF Ex. C). A review may
8 also be conducted if ordered by a Deputy Director, Assistant
9 Director, Chief Director or the Director of the CDC. After
10 investigating the incident, the Board determines if the shooting
11 complied with CDC's use-of-force policy and prepares a report for
12 the Director.

13 On its face, this policy is not "so deficient that the
14 policy itself is a repudiation of constitutional rights."
15 Jeffers, 267 F.3d at 914. Rather, it is a neutral policy
16 designed to monitor compliance with CDC guidelines regarding the
17 use of force by prison staff. Plaintiffs present no evidence
18 that Terhune enacted or enforced the Shooting Review Policy or
19 practices related to shooting investigations with deliberate
20 indifference.

21 Plaintiffs evidence does not support their allegations
22 that Terhune encouraged or condoned cursory investigations of
23 shootings. (Schwartz Decl. at 10-14). Furthermore, their
24 evidence does not raise a triable issue of fact that Terhune was
25 deliberately indifferent to inmate safety because he did not
26 reject the SRB findings relating to the February 4, 1998
27 incident. Plaintiffs allegations that the SRB conducted an
28 inadequate investigation in this case does not, absent specific

10

1  evidence, raise an inference that Terhune promoted a custom or
2  pattern of inadequate investigations, or encouraged SRBs to
3  exonerate staff members who violated the use of force policy as a
4  matter of course.

5          Thus, Terhune is entitled to summary judgment on the
6  basis of qualified immunity for all claims pertaining to the
7  shooting review policy and SRB investigation.

8          4.   Failure to Train

9          Plaintiffs allege that defendant Terhune failed to
10 oversee proper training, supervision, and discipline of
11 correctional officers at HDSP, resulting in the inappropriate use
12 of deadly force against Torres.  Plaintiffs argue that CDC
13 officers are trained to shoot at the "center mass" or heart area
14 of silhouette targets, and not trained to shoot at "less than
15 lethal" targets, which plaintiffs contend is inconsistent with
16 CDC's lethal force policy that requires officers to shoot "to
17 disable and stop rather than to kill."  (Warren Decl. at 18;
18 Pls.' Opp'n at 27).

19         In Jeffers, the Ninth Circuit determined that the
20 director of the CDC could not be held liable for the allegedly
21 unconstitutional use of force by individual correctional officers
22 under a failure-to-train theory.  Jeffers, 267 F.3d at 915-16.
23 The plaintiff, who was wounded by a rifle shot fired by an
24 officer during a prison riot, argued that CDC officer training
25 was inadequate in light of the Department's "shoot to disable"
26 policy because officers were trained to shoot at center mass
27 rather than at arms or legs.  Id.  The Ninth Circuit reasoned
28 that "[n]one of these circumstances, however, supports the

11

1 conclusion that an inadequacy in CDC's training program led to a
2 deliberate violation by [the Director] of [the plaintiff's]
3 Eighth Amendment rights."  Id. at 916.  The court concluded that
4 even if the allegations of inadequate training were taken as
5 true, the deficiencies were "insufficient to establish, even
6 circumstantially, that a substantial risk of serious harm to
7 inmates was known" to the Director.  Id. at 917.

8         Here, plaintiffs have not presented evidence that
9 Terhune conducted himself in a "reckless or malicious manner, or
10 that his actions were, in fact, deliberate."  Id. at 916.  Such a
11 showing is necessary to establish a triable issue of fact that
12 would overcome qualified immunity.  Plaintiffs have presented no
13 evidence that Terhune exhibited deliberate indifference in
14 overseeing the training and supervision of CDC officers, or that
15 his policymaking activities caused the alleged constitutional
16 violation.

17         Thus, Terhune is entitled summary judgment on the basis
18 of qualified immunity for all claims pertaining to CDC and HDSP
19 training, supervision, and discipline.

20         5.   Warden Susan Yearwood

21         Plaintiffs contend that Warden Susan Yearwood's
22 shortcomings in overseeing HDSP led to the improper enforcement
23 of the CDC lethal force policy.  (Pls.' Opp'n at 26).  They
24 allege that Terhune had knowledge of Yearwood's alleged
25 shortcomings and of another shooting incident at HDSP that
26 occurred prior to February 4, 1998, while the prison was under
27 Yearwood's management.  They suggest that Terhune's
28 recommendation of Yearwood for appointment to the warden

                                12

1 position, and his subsequent failure to promptly remove her
2 despite this knowledge, contributed to the alleged constitutional
3 violations.  (Pls.' Opp'n at 30).

4        Plaintiffs' evidence demonstrates that Terhune was
5 aware of Yearwood's performance as HDSP warden and participated
6 in discussions related to her removal.[2]  (Tristan Dep., Pls.'
7 Opp'n Ex. 8).  Plaintiffs cite Terhune's deposition, in which he
8 stated that he was aware of Yearwood's management style, which
9 was apparently memo-oriented, and her display of unusual
10 behaviors such as her preoccupation with toy cars. (Terhune Dep.,
11 Pls.' Opp'n Ex. 12).

12        Because Terhune cannot be held liable for the actions
13 of subordinates on a theory of vicarious liability under § 1983,
14 plaintiffs must show a causal link between Terhune's actions and
15 the alleged constitutional violation.  Jeffers, 267 F.3d at 915.
16 Merely alleging that HDSP was poorly managed at the time of the
17 incident is insufficient to establish a deliberate violation by
18 Terhune of the decedent's constitutional rights.  To raise a
19 triable issue of fact under the Eighth Amendment, plaintiffs must
20 show that Terhune knew of and disregarded an excessive risk to
21 inmate safety.  Farmer, 511 U.S. at 837.

22        Plaintiffs have produced no evidence demonstrating that
23 Terhune's knowledge of Yearwood's alleged shortcomings manifested

24

25        [2]     Under California Penal Code § 6050, wardens are
26 appointed by the Governor upon the recommendation of the CDC
   Director, and are subject to removal by the Director.  Cal. Penal
27 Code § 6050.  The evidence presented is unclear as to Terhune's
   role in the recommendation of Yearwood for appointment to the
28 warden position at HDSP.  (Terhune Dep., Pls.' Opp'n Ex. 7 at
   21).

13

1 deliberate indifference, namely that he had knowledge that her
2 performance would create an excessive risk of constitutional
3 violations and that he failed to respond accordingly. Plaintiffs
4 evidence demonstrates that Terhune engaged in discussions with
5 other prison officials regarding Yearwood's problems and the
6 possibility of reassigning her to another prison. (Terhune Dep.,
7 Pls.' Opp'n Ex. 12). Plaintiffs' allegations that "Terhune began
8 actively concealing Ms. Yearwood's mental condition, and
9 transferred her yet to another institution, to minimize the
10 Department's liability" is not supported by the evidence. (Pls.'
11 Opp'n at 24).

12      Finally, Terhune's knowledge of one other shooting
13 incident that occurred at HDSP prior to February 4, 1998 does not
14 defeat his claim of qualified immunity. Jeffers, 267 F.3d at
15 915. In Jeffers, the Ninth Circuit rejected a district court's
16 conclusion that the CDC Director's knowledge of a high number of
17 previous prison shootings could overcome qualified immunity,
18 where the lethal force policy in effect at the time of the
19 plaintiff's injury was constitutional. Id. The court reasoned
20 that "[u]nder this reading a CDC Director would never prevail on
21 qualified immunity on any claim for an injury in a California
22 prison." Id.

23      Thus, Terhune is entitled to summary judgment on the
24 basis of qualified immunity for claims related to his
25 participation in the appointment, supervision, and removal of
26 defendant Yearwood.

27      6.   Emergency Medical Care

28           Plaintiffs argue that prior to his death, Torres was

14

deprived of adequate emergency medical care in violation of his Eighth Amendment rights. (Pls.' Opp'n at 31-32). Terhune did not participate in the administration of medical care to Torres, thus his conduct can only be analyzed at the policymaking level.

The threshold question under the Eighth Amendment is whether a prison official, acting with deliberate indifference, exposed an inmate to a sufficiently substantial risk of serious damage to his future health. Farmer, 511 U.S. at 843. To establish deliberate indifference, plaintiffs must show that the defendant knew of and disregarded an excessive risk to the decedent's health or safety. Farmer, 511 U.S. at 837.

Plaintiffs' claim against Terhune fails because they present no evidence suggesting that the Director exhibited deliberate indifference in promulgating or authorizing policies related to inmate medical care, or that there was an affirmative link between Terhune's conduct and the alleged constitutional deprivation.

Thus, Terhune is entitled to summary judgment on this issue.

D.   Fourteenth Amendment Claims

1.   Torres' Placement on Lockdown

Plaintiffs allege that Torres' due process rights were violated when he was placed on lockdown status between November 24, 1997 and February 4, 1998 without notice or a hearing. This lockdown was a result of a prior incident in which members of the "Southern Hispanics" group stabbed members of the "Others" group. Torres and other inmates from both groups were placed on lockdown status, which reduced their access to various programs and

15

1 activities for a limited period of time.  (Pls.' Opp'n at 7).
2 Defendant prison officials allege that Torres and other members
3 of his faction were placed on lockdown for their protection.

4           Because Terhune was not involved in the decision to
5 place Torres on lockdown, this claim can only be analyzed in the
6 context of his policymaking activities.  The Supreme Court has
7 emphasized that "[p]rison administrators ... should be accorded
8 wide-ranging deference in the adoption and execution of policies
9 and practices that in their judgment are needed to preserve
10 internal order and discipline and to maintain institutional
11 security."  Whitley v. Albers, 475 U.S. 312, 321-22 (1986).  The
12 Due Process Clause is not violated where an inmate is transferred
13 "to less amenable and more restrictive quarters for nonpunitive
14 reasons" as these restrictions are "well within the terms of
15 confinement ordinarily contemplated by a prison sentence."
16 Hewitt v. Helms, 459 U.S. 460, 468 (1983).

17           Plaintiffs have not shown that Torres was restrained
18 pursuant to a policy promulgated by Terhune that "impose[d]
19 atypical and significant hardship ... in relation to the ordinary
20 incidents of prison life."  Sandlin v. Conner, 515 U.S. 472, 484
21 (1995).  Plaintiffs' evidence is insufficient to establish a
22 triable issue of fact with respect to a Fourteenth Amendment
23 violation arising out of Torres' placement on lockdown.

24           2.  Plaintiffs' Substantive Due Process Claim

25           Plaintiffs claim that they were denied their Fourteenth
26 Amendment right to a familial relationship with Torres.  (Am.
27 Compl. ¶¶ 94, 95).  Parents and children of a person killed by
28 state officials may assert a due process claim based on loss of

16

1  companionship.  Moreland v. Las Vegas Metropolitan Police, 159
2  F.3d 365, 371 (9th Cir. 1998) (reasoning that Fourteenth
3  Amendment claim brought by survivors was "based on the related
4  deprivation of their liberty interest arising out of their
5  relationship with [the decedent]") (citing Curnow v. Ridgecrest
6  Police, 952 F.2d 321, 325 (9th Cir. 1991)).  Plaintiffs'
7  Fourteenth Amendment rights to the companionship of Torres,
8  however, derive from the decedent's constitutional rights.
9  Johnson v. City of Oakland, No. C-97-283, 1997 WL 776368, at *4
10 (N.D. Cal. Dec. 3, 1997) (citing Smith v. Fontana, 818 F.2d 1411,
11 1420 (9th Cir. 1987)); see also Rhyne v. Henderson, 973 F.2d 386,
12 391 (5th Cir. 1992) (finding that mother's liberty interest
13 failed where evidence failed to establish underlying
14 constitutional violation of decedent's rights).  Because no
15 reasonable jury could find that Terhune violated Torres'
16 constitutional rights, plaintiffs' Fourteenth Amendment claim
17 also fails.

18          3.  Equal Protection Claim

19          Plaintiffs allege that Torres was also denied his right
20 to equal protection under the Fourteenth Amendment.  (Am. Compl.
21 ¶ 68).  This claim fails because plaintiffs present no evidence
22 raising a triable issue of fact that Torres was treated
23 differently from similarly situated persons with respect to the
24 lockdown, yard release, use of force, or medical care.  See City
25 of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

26      E.  Section 1985 Claim

27          Plaintiffs allege that Terhune and other defendants
28 conspired to release rival gang members into the yard knowing

                                17

1  that they would fight with one another.  (Am. Compl. ¶ 75).
2  Plaintiffs contend that the defendants manipulated facts to
3  justify Torres' death, fabricated investigation and autopsy
4  reports, and destroyed evidence demonstrating that Torres was an
5  innocent victim.  (Am. Compl. ¶¶ 76, 77, 81).  They also allege
6  that defendants conspired to enforce the integrated yard policy
7  knowing that it would result in violence, and an unwritten lethal
8  force policy which encouraged officers to shoot inmates for
9  unlawful reasons.  (Am. Compl. ¶¶ 82-84).  These allegations are
10  not supported by the evidence.

11          To state a claim under 42 U.S.C. § 1985 for conspiracy
12  to interfere with civil rights, plaintiffs must include an
13  allegation of racial or class-based animus.  <u>Usher v. City of Los</u>
14  <u>Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987) ("To establish racial
15  or class-based animus, a plaintiff must show 'invidiously
16  discriminatory motivation ... behind the conspirators'
17  action.'") (citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102
18  (1971)).  Furthermore, allegations under § 1985 must be supported
19  by specific facts.  <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839
20  F.2d 621, 626 (9th Cir. 1988) ("A claim under this section must
21  allege facts to support the allegation that defendants conspired
22  together.  A mere allegation of conspiracy without factual
23  specificity is insufficient.").

24          Plaintiffs contend that the "Southern Hispanics," of
25  which Torres was a member, is a protected class for the purpose
26  of § 1985.  However, plaintiffs have produced no evidence
27  suggesting the existence of racial or class-based animus on the
28  part of defendants underlying a conspiracy to deprive the

                                18

1 decedent of his civil rights.  Furthermore, plaintiffs present no
2 facts suggesting that Terhune and other defendants acted jointly
3 to deprive Torres of his constitutional rights.  Plaintiffs'
4 allegations are insufficient, as a matter of law, to establish a
5 § 1985 violation.[3]

6    F.    Claims Against Terhune in his Official Capacity

7         Plaintiffs have sued Terhune for damages in his
8 individual and official capacities.  The Eleventh Amendment bars
9 a suit for damages against a state official who is sued in his
10 official capacity in federal court. Kentucky v. Graham, 473 U.S.
11 159, 169 (1985); Dittman v. California, 191 F.3d 1020, 1026 (9th
12 Cir. 1999).  Plaintiffs' claims against Terhune in his official
13 capacity are dismissed.

14    G.    State Law Claims

15         Under 28 U.S.C. § 1367(c)(3), the court has discretion
16 to dismiss state law claims when it has dismissed all of
17 plaintiff's federal claims.  "In the usual case in which federal
18 law claims are eliminated before trial, the balance of factors .
19 . . will point toward declining to exercise jurisdiction over the
20 remaining state law claims." Carnegie-Mellon Univ. v. Cohill,
21 484 U.S. 343, 350 n. 7 (1988); Schneider v. TRW, Inc., 938 F.2d
22 986, 993 (9th Cir. 1991).  Some circuits have held that a court

23

24         [3]    To the extent plaintiffs' request to add complaint
   allegations in support of the § 1985 claim can be construed as a
25 motion for leave to amend their complaint, this motion is DENIED.
   Allowing plaintiffs to amend the complaint at this stage in the
26 litigation, after summary judgment motions have been filed, would
   be inappropriate under either the standard of Fed. R. Civ. P.
27 16(b) or the more liberal standard of Fed. R. Civ. P. 15.  More
   importantly, the evidence presented in opposition to defendant's
28 motion is insufficient, regardless of the allegations of the
   complaint, to overcome defendant's motion.

19

1 | may retain jurisdiction over state law claims if extraordinary or
2 | unusual circumstances justify their retention.  See, e.g., Musson
3 | Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1255
4 | (6th Cir. 1996); Wentzka v. Gellman, 991 F.2d 423, 425 (7th Cir.
5 | 1993).  However, here there has been no showing of extraordinary
6 | or unusual circumstances.  Accordingly, the court declines to
7 | exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) as
8 | to the remaining state law claims.[4]

9 |         IT IS THEREFORE ORDERED that Terhune's motion for
10 | summary judgment with respect to the federal causes of action be,
11 | and the same hereby is, GRANTED.  The remaining state claims are
12 | DISMISSED pursuant to 28 U.S.C. § 1367(c).

13 | DATED: January 9, 2002

WILLIAM B.  SHUBB
UNITED STATES DISTRICT JUDGE

---

[4]      Plaintiffs complain generally about "spoilation of evidence" and discovery abuses by Terhune and other defendants. Plaintiffs' motion to compel evidence including bullet fragments and casings from the February 4, 1998 shooting was considered and denied by this court on October 3, 2001.  Furthermore, plaintiffs have had ample opportunity to file, and have filed, numerous discovery-related motions before this court and the magistrate judge.  Finally, this court has bent over backwards to address plaintiffs' concerns and ensure fairness in the discovery process, for example by taking discovery away from the magistrate judge and personally presiding over the parties' depositions.

20

United States District Court
for the
Eastern District of California
January 9, 2002


* * CERTIFICATE OF SERVICE * *


2:98-cv-02211


Estate Torres

   v.

Terhune

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  January 9, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Roger E Naghash                    SH/WBS
        Law Offices of Roger E Naghash
        One Newport Place
        1301 Dove Street
        Suite 1000
        Newport Beach, CA  92660-2478

        Michael J Williams
        Attorney General's Office of the State of California
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA  94244-2550

        Gregory Scott Walston
        Attorney General's Office of the State of California
        455 Golden Gate Avenue
        Suite 11000
        San Francisco, CA  94102-3664

        Jesse Manuel Rivera
        Moreno and Rivera
        1451 River Park Drive
        Suite 205
        Sacramento, CA  95815

Van Longyear
Longyear O'Dea and Lavra
3620 American River Drive
Suite 230
Sacramento, CA  95864-5923

Bruce Alan Kilday
Angelo Kilday and Kilduff
601 University Avenue
Suite 150
Sacramento, CA  95825

John Andrews Mason
Adams and Mason
PO Box 19937
730 Alhambra Boulevard
Suite 202
Sacramento, CA  95816

Jack L. Wagner, Clerk

BY: _____
    Deputy Clerk